## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

RENE MITCHELL,

     Plaintiff,

     v.

U.S. BANK NATIONAL ASSOCIATION,
U.S. BANK NATIONAL ASSOCIATION *as
Trustee for Mastr Asset Backed Securities
Trust 2005-FRE1*,
OCWEN LOAN SERVICING, LLC,
PHH MORTGAGE CORPORATION,
OCWEN FINANCIAL CORPORATION and
BROCK & SCOTT, PLLC,

     Defendants.

Civil Action No. TDC-19-2225

## MEMORANDUM OPINION

Plaintiff Rene Mitchell has filed suit against the entities involved in servicing and foreclosing on a mortgage to finance the purchase of her home in Bowie, Maryland. Mitchell has alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p (2018); the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617 (2018); the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201–14-204 (LexisNexis 2013); the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101–13-501d; and the Maryland Mortgage Fraud Protection Act ("MFPA"), Md. Code Ann., Real Prop. §§ 7-401–7-409 (LexisNexis 2015), as well as a common law claim of negligence. Presently pending before the Court are a Motion to Dismiss filed by Defendants Ocwen Loan Servicing,

LLC ("Ocwen"), Ocwen Financial Corporation ("Ocwen Financial"), U.S. Bank National Association ("U.S. Bank"), U.S. Bank National Association, as Trustee under Pooling and Servicing Agreement dated as of November 1, 2005 MASTR Asset-Backed Securities Trust 2005-FRE1 Mortgage Pass-Through Certificates, Series 2005-FRE1 ("U.S. Bank Trustee"), and PHH Mortgage Corporation ("PHH"), as well as a separate Motion to Dismiss filed by Defendant Brock & Scott, PLLC ("Brock & Scott"), adopting the first Motion to Dismiss in its entirety. Having reviewed the operative complaint and the briefs, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motions are GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The following facts are presented in the light most favorable to Mitchell, the non-moving party.

### I.     ARM Mortgage Loan

In 2005, Mitchell purchased the residential property located at 9003 Harness Way in Bowie, Maryland ("the Property"). Mitchell initially agreed to a conventional 30-year fixed-rate mortgage loan through Fremont Investment and Loan ("Fremont"). At the July 11, 2005 closing on the purchase of the Property, however, as Mitchell began to sign the necessary papers, she observed that the promissory note ("the Note") stated that the mortgage ("the ARM Mortgage Loan") was an adjustable-rate mortgage ("ARM"). According to Mitchell, upon discovering the discrepancy, she refused to continue signing the closing documents and requested that the Note and deed of trust ("the Deed"), both of which she had signed, be returned immediately and that she receive new, corrected documents for her signature. The settlement agent told Mitchell that, by law, the signed documents had to be retained and shredded later, so Mitchell requested that

"VOID" markings be placed on all of the documents she had signed, including the Note and the Deed, and that copies of the documents with the "VOID" markings be provided to her.  The settlement agent stamped the Note and the Deed with "VOID" markings, then placed her own initials next to each stamp.  Mitchell also placed her initials next to each stamp, and copies of these documents were provided to Mitchell.

Mitchell asserts that when she informed Fremont on July 11, 2005 of the error and forwarded copies of the voided loan documents, Fremont agreed that the use of documents reflecting an ARM had been incorrect.  On July 12, 2005, the following day, Fremont and Mitchell agreed to cancel the ARM Mortgage Loan.  Fremont then issued a written notice confirming the cancellation and offered to issue a new fixed-rate note and deed of trust.  On July 15, 2005, Fremont returned to Mitchell copies of the ARM Mortgage Loan documents bearing the original "VOID" markings and initials from the closing day and with the additional stamped notation "Cancellation and Satisfaction in Full" on each document.  Second Amended Complaint ("SAC") ¶ 45, ECF No. 22.

At no time, however, was Mitchell presented with the opportunity to execute any closing documents relating to a fixed-rate note or deed of trust.  Rather, on July 14, 2005, a deed of trust to the Property reflecting an ARM was recorded in the land records for Prince George's County, Maryland.  This deed of trust and the corresponding note lacked both the "VOID" markings and initials affixed at the closing and Fremont's cancellation stamp, and instead had the marking "Redacted" on each page.  SAC ¶ 65.

## II.    Foreclosure

The ARM Mortgage Loan was later assigned to U.S. Bank and U.S. Bank Trustee.  In 2010, Ocwen Financial and its subsidiary, Ocwen, took over the servicing of the ARM Mortgage

Loan.  In 2013, Mitchell went into default, and beginning in October 2014, Brock & Scott, acting as substitute trustee, began sending Mitchell notices of intent to foreclose on the Property pursuant to the terms of the ARM Mortgage Loan.  On August 24, 2015, Brock & Scott filed a foreclosure action against Mitchell in the Circuit Court for Prince George's County, Maryland ("the Circuit Court").  *See BSPLLC v. Mitchell*, No. CAEF15-20853 (Cir. Ct. Prince George's Cty. filed Aug. 24, 2015), *available at* http://casesearch.courts.state.md.us/casesearch/.  Mitchell filed a motion to dismiss the case, arguing that Brock & Scott did not have the right to foreclose on the Property because the ARM Mortgage Loan had been voided, and the documents provided as the basis for the action were forged.  On February 11, 2016, the Circuit Court denied Mitchell's motion to dismiss without a hearing, but on May 31, 2017, the Court of Special Appeals of Maryland vacated the order and remanded the case based on the finding that the documents submitted in support of foreclosure were "clearly false and materially altered to look genuine," including by removing the "VOID" markings and notations added on the date of closing and by applying a stamp with the marking "REDACTED."  *Mitchell v. Yacko*, 161 A.3d 14, 15, 25 (Md. Ct. Spec. App. 2017).

On remand, the Circuit Court held several evidentiary hearings between November 21, 2017 and August 20, 2019 on the authenticity of the relevant mortgage documents.  During a hearing on February 4, 2019, Ocwen disclosed a "Comment Log" providing a history of actions it took in servicing the ARM Mortgage Loan, including numerous communications with Mitchell, between August 2010 and July 2016.  SAC ¶ 17.  In the same hearing, Mitchell received for the first time the purported original versions of the ARM Mortgage Loan documents, which did not show any of the "VOID" markings or initials affixed at the closing, but showed that Mitchell's signature had been forged.  At the conclusion of these hearings, the Circuit Court found that "given the weight of the evidence," Mitchell had "established that the lien and lien instrument are invalid,"

4

such that Brock & Scott "ha[s] no right to foreclose on an adjustable rate mortgage." *BSPLLC*, No. CAEF15-20853 (Cir. Ct. Prince George's Cty. decided Sept. 9, 2019), SAC Ex. A, ECF No. 22-2. The Circuit Court therefore granted Mitchell's motion to dismiss the foreclosure proceedings on September 5, 2019.

### III.  PHH Letters

In October 2018, during these foreclosure proceedings, Ocwen Financial purchased PHH. By June 2019, Ocwen Financial had transferred the servicing of the ARM Mortgage Loan from Ocwen to PHH. As servicer of what it claimed to be an ARM, PHH sent three different letters to Mitchell ("the PHH Letters"). On May 31, 2019, PHH sent Mitchell a letter informing her that she was required to provide hazard insurance for the Property and that if she failed to do so, PHH would obtain such an insurance policy at her expense. On June 17, 2019, PHH sent a notice to Mitchell informing her of upcoming changes to her mortgage interest rate and informing her of the monthly payment amount that would be due starting in September 2019. Finally, on September 17, 2019, PHH sent a letter to Mitchell noting her missed mortgage payments and detailing various borrower assistance options and foreclosure alternatives that were available to Mitchell.

### IV.  *Mitchell I*

On June 30, 2017, while the foreclosure action was pending in the Circuit Court after remand from the Court of Special Appeals, Mitchell filed a civil action in the United States District Court for the District of Maryland against U.S. Bank, U.S. Bank Trustee, Brock & Scott, and Ocwen ("the *Mitchell I* Defendants"), asserting claims of negligence, fraud, and violations of the FDCPA, 15 U.S.C. §§ 1692–1692p; FCRA, 15 U.S.C. §§ 1681–1681x; MCDCA, Md. Code Ann., Com. Law § 14-202; and MCPA, Md. Code Ann., Com. Law § 13-301, based on the use of the forged loan documents associated with the ARM Mortgage Loan. *See Mitchell v. U.S. Bank Nat'l*

*Ass'n*, No. PX-17-1805, 2018 WL 4679949 (D. Md. Sept. 28, 2018) ("*Mitchell I*").  On September 28, 2018, the court (Xinis, J.) granted a Motion to Dismiss filed by the *Mitchell I* Defendants.  The court dismissed Mitchell's negligence, FDCPA, and FCRA claims as time-barred by the applicable statute of limitations and dismissed the fraud, MCDCA, and MCPA claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or for failure to meet the heightened standard for allegations of fraud under Rule 9(b).

## V.     The Complaint

On July 31, 2019, Mitchell filed the original Complaint in this case, which was amended on August 13, 2019 and for a second time on September 30, 2019 ("the Second Amended Complaint").  In the Second Amended Complaint, Mitchell has named the *Mitchell I* Defendants, as well as Ocwen Financial and PHH, as Defendants.  Mitchell alleges seven counts, including a claim of negligence and violations of the following federal and state statutes, numbered as follows: (I) negligence;  (II) FDCPA; (III) FCRA; (IV) MCDCA; (V) MCPA; (VI) RESPA; and (VII) MFPA.  All of the counts are based on Mitchell's allegation that the loan documents associated with the ARM Mortgage Loan were fraudulently forged or altered, such that the ARM Mortgage Loan was unenforceable.

## DISCUSSION

In their Motions, Defendants seek dismissal of the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that (1) the claims are barred by *res judicata* because they arise from the same transaction or series of transactions underlying the claims in *Mitchell I*; (2) any new claims under the FDCPA are barred by the applicable statutes of limitations; and (3) all of Mitchell's allegations are insufficient to state plausible claims for relief. In opposing the Motion, Mitchell argues that *res judicata* does not bar her claims because there

are different parties than in *Mitchell I*, and the claims are based on new facts uncovered during the evidentiary hearings before the Circuit Court, specifically the discovery that the ARM Mortgage Loan documents contained forgeries of her signature and that Ocwen kept a Comment Log recording its interactions with Mitchell, including debt collection activities.  Mitchell also argues that her claims relating to debt collection activities are not barred by the statute of limitations because they are based on the letters sent by PHH to Mitchell in 2019, and that she otherwise has stated plausible claims for relief.

## I.   Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678.  The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Documents attached to the complaint or motion may be considered if "they are integral to the complaint and authentic."  *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  Where the three letters sent by PHH in 2019 are attached to the Second Amended Complaint and are of unquestioned authenticity, the Court may consider them.  The court may also take judicial notice of matters of public record.  *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  When considering a Rule 12(b)(6) motion based on *res*

*judicata*, the courts may "take judicial notice of facts from a prior judicial proceeding" when the assertion of preclusion as a defense "raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000). Accordingly, in resolving the Motions, the Court will take judicial notice of, and consider the record of, the Maryland state court foreclosure proceedings and *Mitchell I*.

## II.    *Res Judicata*

Defendants argue that Mitchell's claims are barred by *res judicata* because they were or could have been litigated in *Mitchell I*. Because the prior suit at issue was a federal case, federal rules of *res judicata* apply. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law."); *Andrews*, 201 F.3d at 524. *Res judicata* is a legal doctrine that promotes judicial efficiency and the finality of decisions. *In re Microsoft Corp Antitrust Litigation*, 335 F.3d 322, 325 (4th Cir. 2004). Under the doctrine of *res judicata*, a final judgment on the merits in an earlier decision precludes the parties from relitigating issues that were raised or could have been raised during that action. *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004). This doctrine applies when there is: (1) a final judgment on the merits in a prior lawsuit; (2) an identity of cause of action in both the earlier and later suits; and (3) an identity of parties or their privies in the two suits. *Id.* at 354-55. Although *res judicata* is an affirmative defense, it may be raised on a Rule 12(b)(6) motion to dismiss if the defense raises no disputed issues of fact. *Andrews*, 201 F.3d at 524 n.1; *Thomas v. Consolidation Coal Co.*, 380 F.2d 69, 75 (4th Cir. 1967).

### A.    **Final Judgment on the Merits**

Here, Mitchell does not dispute that *Mitchell I* culminated in a final judgment on the merits. In *Mitchell I*, the Court dismissed several counts as time-barred and other counts for failure to state

a claim pursuant to Rule 12(b)(6), then closed the case.  Where a federal district court's dismissal of a plaintiff's action is on statute of limitations grounds, such a determination is a final judgment on the merits. *Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1179-81 (4th Cir. 1989).  The United States Court of Appeals for the Fourth Circuit has also held that a dismissal on a Rule 12(b)(6) motion, unless explicitly identified as a dismissal "without prejudice," is also a final judgment on the merits. *See McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009); *see also* Fed. R. Civ. P. 41(b) (stating that "[u]nless the dismissal order states otherwise," an involuntary dismissal other than for lack of jurisdiction, improper venue, or failure to join a party "operates as an adjudication on the merits").  Thus, the first requirement of *res judicata* is met.

## B.    Identity of Parties

On the question of identity of parties, Mitchell was a party in both *Mitchell I* and the present action.  Four of the six Defendants in the present case were also named in *Mitchell I:* U.S. Bank, U.S. Bank Trustee, Ocwen, and Brock & Scott.  These four Defendants are clearly bound by the findings in the previous action.

In this case, Mitchell has added two new defendants: Ocwen Financial and PHH.  Under certain circumstances, "nonparties can be precluded from relitigating issues determined in a prior suit," such as when a non-party is in privity with a party to a former litigation.  *Martin v. Am. Bancorporation Retirement Plan*, 407 F.3d 643, 654 n.18 (4th Cir. 2005) (citations omitted).  Privity does not require "an exact identity of parties," but rather "whether the interests of one party are so identified with the interests of another that representation by one party is representation of the other's legal right." *Weinberger v. Tucker*, 510 F.3d 486, 491-92 (4th Cir. 2007).  The United States Supreme Court has stated that "nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationships' between the person to be bound and a party to the

judgment," which may include "assignee and assignor." *Taylor*, 553 U.S. at 894. There are three "generally recognized categories of non-parties who will be considered in privity with a party to the prior action": (1) "a non-party who controls the original action; (2) a successor-in-interest to a prior party; and (3) a non-party whose interests were adequately represented by a party to the original action." *Martin*, 407 F.3d at 651.

Defendants argue that there is privity binding Ocwen Financial and PHH to the prior *Mitchell I* action because Ocwen and PHH are both wholly-owned subsidiaries and agents of Ocwen Financial, and Ocwen Financial and PHH are servicing agents for the ARM Mortgage Loan. Mitchell disagrees that privity applies and asserts that the Second Amended Complaint does not specifically allege that the requisite relationship exists between Ocwen Financial, PHH and the *Mitchell I* Defendants, especially because any statements made by Mitchell in her Second Amended Complaint are only based on her "information and belief." Opp'n Mot. Dismiss at 20, ECF No. 53.

Mitchell, however, specifically alleges that all Defendants in the present case "are and at all material times have been, the agents, servants or employees of each other" in relation to the acts and omissions at issue in this case. SAC ¶ 33. In particular, Mitchell asserts that Defendants were acting as assignees of Plaintiff's lenders, the trustees of the lender, or the loan servicer, and that Ocwen and PHH are wholly owned by Ocwen Financial and acted as Ocwen Financial's authorized agents. Where, at this stage, the Court must construe the facts alleged in the Second Amended Complaint as true, Mitchell cannot rely on these allegations in order to state a plausible claim of imputed liability against the different Defendants but at the same time reject those same, well-pleaded facts in an attempt to avoid the application of *res judicata*.

As to Ocwen Financial, Mitchell has alleged that Ocwen, a defendant in *Mitchell I*, is a wholly-owned subsidiary of Ocwen Financial.  Given this relationship, the Court concludes that Ocwen Financial is in privity with Ocwen either because it had the ability to control the prior litigation as it related to Ocwen, or because its interests were adequately represented by Ocwen. *See Martin*, 407 F.3d at 651; *Saudi v. V. Ship Switzerland, S.A.*, 93 F. App'x 516, 520–21 (4th Cir. 2004) (holding that a subsidiary, as a "mere corporate vehicle" controlled by the parent, established a privity relationship between the two entities); *Whitehead v. Viacom, Inc.*, 233 F. Supp. 2d 715, 721 (D. Md. 2002) (holding that a parent company was in privity with its wholly-owned subsidiary for purposes of *res judicata* and was thus bound by the results of a prior case against the subsidiary), *aff'd sub nom. Whitehead v. Viacom, Inc.*, 63 F. App'x 175 (4th Cir. 2003).

As for PHH, Mitchell asserts that Ocwen Financial transferred servicing of the ARM Mortgage Loan from Ocwen to PHH in June 2019.  As the new loan servicer for Mitchell's mortgage, PHH was the successor-in-interest to Ocwen in relation to the ARM Mortgage Loan and therefore is in privity with Ocwen.  *See Martin*, 407 F.3d at 651; *Blum v. Ocwen Loan Servicing, LLC*, No. JKB-17-1586, 2017 WL 7370974, at *1-2 (D. Md. Dec. 4, 2017) (holding that a subsequent loan servicer was in privity with the prior loan servicer).  Both Ocwen and PHH are also wholly-owned subsidiaries of the same company, Ocwen Financial, and based on this relationship, PHH and Ocwen are in privity with one another. *See Dunlap v. Cottman Transmissions Sys., LLC*, 689 F. App'x 188, 189 (4th Cir. 2017) (holding that two companies, both wholly owned subsidiaries of the same company, were in privity with one another).

Where both Ocwen Financial and PHH are in privity with Ocwen, and Ocwen was a defendant in *Mitchell I*, the requirement of identity of the parties and their privies has been satisfied.

### C.    Identity of Cause of Action

Having concluded that the first and third requirements for the application of *res judicata* have been met, the Court considers the main point of dispute, whether there is an identity of causes of action.  Cases involve the same "cause of action" if they "arise out of the same transaction or series of transactions or the same core of operative facts." *Pueschel*, 369 F.3d at 355 (quoting *In re Varat Enters., Inc.*, 81 F.3d 1310, 1316 (4th Cir. 1996)).  Even if a plaintiff is proceeding under a different legal theory, "[a]s long as the second suit arises out of the same transaction or series of transactions as the claim resolved by the prior judgment, the first suit will have preclusive effect." *Ohio Valley Envt'l. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009) (internal citation omitted).  Notably, *res judicata* bars not only claims actually litigated in the first case, but also claims that could have been litigated in that proceeding. *Pueschel*, 369 F.3d at 355-56.

Here, Mitchell's seven claims can be divided into two categories as compared to the claims in *Mitchell I*: (1) the causes of actions previously asserted in *Mitchell I*, consisting of the negligence, FDCPA, FCRA, MCDCA, and MCPA claims; and (2) the RESPA and MFPA claims, which were not asserted in *Mitchell I* but are based on the same set of facts occurring prior to *Mitchell I*.  The Court will address these categories separately.

### 1.    Renewed Claims

In the Second Amended Complaint, Mitchell alleges five claims asserted in *Mitchell I*: negligence and violations of the FDCPA, FCRA, MCDCA, and MCPA.  Two of these causes of action contain language that is identical to the same claims previously asserted in *Mitchell I*: the MCDCA claim in Count IV and the MCPA in Count V.  In comparing the text of the allegations in Counts I-III with the comparable allegations in the complaint in *Mitchell I*, the Court finds that they are largely identical, but Mitchell has added certain new allegations to the counts asserted in

12

the Second Amended Complaint.   As to the negligence claim in Count I, Mitchell adds the allegation that Defendants breached their duty of care to Mitchell by "adjusting the interest rate of the loan and increasing the amount of the payments for said loan based on forged documents without any legal basis to do so."  SAC ¶ 78.  As to the FDCPA claim in Count II, Mitchell added an allegation that Defendants made false, deceptive, and misleading representations that the interest rate for the debt was adjustable when it was not.  Even with these minor differences, the language of these counts contains very similar allegations arising from the same transactions or occurrences as in *Mitchell I* and does not provide a basis to find that these counts are not based on the "same core of operative facts" as those underlying *Mitchell I*.  *Pueschel*, 369 F.3d at 355.

Mitchell argues, however, that the Second Amended Complaint contains new allegations based on new evidence that preclude the application of *res judicata*.  First, in the general allegations of the Second Amended Complaint and the specific allegations on Counts I-III, Mitchell has added facts relating to a Comment Log that was first disclosed by Ocwen at a February 4, 2019 evidentiary hearing in the Circuit Court.  Specifically, Mitchell asserts that the Comment Log shows that between August 2010 and July 2016, Defendants harassed Mitchell through a series of actions, including door knocks, phone calls, collection letters, and reports to credit bureaus, as documented in a Comment Log.  Second, Mitchell asserts that, based on her observation of the original ARM Mortgage Loan documents, which she was not allowed to see until the February 4, 2019 evidentiary hearing, those documents contained forgeries of her signature.  Third, she asserts that beginning on May 31, 2019, PHH, after assuming the role of loan servicer, began sending Mitchell a series of three letters relating to the collection of the debt arising from the ARM Mortgage Loan that misrepresented the validity of the loan.

Although Mitchell is correct that the Second Amended Complaint includes additional facts not asserted in *Mitchell I*, these facts do not necessarily preclude application of *res judicata* on any of the five renewed claims.   "Merely stating additional facts in the complaint . . . does not change the nature of the cause of action" for purposes of *res judicata.  Kayzakian v. Buck*, 865 F.2d 1258 (Table), 1988 WL 138438 at *1 (4th Cir. Dec. 20, 1988).  "The doctrine of res judicata would become meaningless if a party could relitigate the same issue . . . by merely positing a few additional facts that occurred after the initial suit." *Dubuc v. Green Oak Township*, 312 F.3d 736, 751 (6th Cir. 2002).  Although Mitchell argues that the existence of the Comment Log and the forged signatures on the ARM Mortgage Loan documents was "previously unknown" before these documents were revealed at the February 4, 2019 evidentiary hearing, months after *Mitchell I* was dismissed on September 28, 2018, SAC ¶¶ 16-17, "Plaintiff's discovery of additional facts following entry [of final] judgment does not block the application of res judicata," where the "facts and events themselves arose prior to the filing of the original complaint" even while the plaintiff's "awareness of these facts . . . came later." *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999); *see also Harnett v. Billman,* 800 F.2d 1308, 1313 (4th Cir. 1986) ("For purposes of res judicata, it is not necessary to ask if the plaintiff knew of his present claim at the time of the former judgment, for it is the existence of the present claim, not party awareness of it, that controls.").   Lack of knowledge of facts is only an exception to *res judicata* if there was fraud, concealment, or misrepresentation that prevented the plaintiff from identifying and asserting in the previous case the claims now asserted. *Harnett*, 800 F.2d at 1313.

Here, the forged signatures and the Comment Log, which on its face contained entries only up to July 2016, both existed before *Mitchell I* was filed on June 30, 2017.  Although Mitchell may not have known of these specific pieces of evidence prior to the evidentiary hearing, she has neither

alleged nor established that these documents were fraudulently concealed from or misrepresented to her.   Even if she had so alleged, Mitchell cannot show that lack of access to these documents prevented her from asserting the negligence, FDCPA, FCRA, MCDCA, and MCPA claims alleged in *Mitchell I*.  The complaint in *Mitchell I* makes abundantly clear that Mitchell was already aware of comparable facts supporting the claims she first asserted in that case.  In *Mitchell I*, she alleged, based on her recounting of the voiding of the ARM Mortgage Loan documents at closing, that the ARM Mortgage Loan was based on fraudulent documents.  She also alleged, presumably because she received them, that Defendants "regularly sent harassing notices" to her and "threaten[ed] to foreclose on her home," *Mitchell I* Am. Compl. ¶ 92, No. PX-17-1805 (ECF No. 9), and that Defendants themselves informed her that they would report to credit agencies that she was in default.  Mitchell thus had substantial personal experience precisely on the issues of allegedly forged mortgage documents and the harassing actions documented in the log.  That experience caused her actually to assert her negligence, FDCPA, FCRA, MCDCA, and MCPA claims in *Mitchell I*.  Thus, where these newly discovered facts referenced by Mitchell did not create new causes of action but instead merely provided additional evidence in support of the claims Mitchell had already asserted and had dismissed in *Mitchell I*, they do not prevent application of *res judicata* to bar relitigation of these claims.  *See Harnett,* 800 F.2d at 1313; *Dubuc*, 312 F.3d at 751; *L-Tec Elecs. Corp.*, 198 F.3d at 88.

The Court reaches a different conclusion as to the FDCPA, MCDCA, and MCPA claims based on the PHH Letters sent to Mitchell in 2019.  While in *Mitchell I*, Mitchell alleged such claims based on debt notices sent up to July 2016, she appears to assert new FDCPA claims based on events that post-date *Mitchell I* and therefore could not have been included in that complaint, specifically, claims based on the PHH Letters sent to Mitchell on May 31, 2019, June 17, 2019,

and September 17, 2019.  Notably, under the FDCPA, the transmission of a specific debt collection notice can form the basis of a discrete claim.  *See Purnell v. Arrow Fin. Servs.*, *LLC*, 303 F. App'x 297, 304 (6th Cir. 2008) (holding that "each failure to cease collection activity without having validated the debt . . . presents a discrete claim for violation of the FDCPA such that only those collection activities taken outside the limitations period would be time-barred"); *see also Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 694 (8th Cir. 2017); *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 501 (D. Md. 2004).  Thus, while *res judicata* bars the litigation of the same FDCPA claims that were actually asserted in *Mitchell  I* based on notices sent before July 2016, and any claims that could have been brought in *Mitchell I* based on notices sent after that date but before *Mitchell  I*, the PHH Letters had not been sent at the time of *Mitchell I* and thus are not barred by *res judicata* because they could not have been brought in that case.  Likewise, where the MCDCA and MCPA claims incorporated all of the preceding facts in the Second Amended Complaint, including those relating to the PHH Letters, the Court construes those claims as including alleged violations based on the PHH Letters and finds that such claims are also not barred by *res judicata.*

Thus, the Court concludes that there is identity of claims between the negligence, FDCPA, FCRA, MCDCA, and MCPA claims asserted in Counts I-V of the Second Amended Complaint and the comparable claims based on events prior to *Mitchell I*, but not as to the FDCPA, MCDCA, and MCPA claims based on the 2019 PHH Letters.  Where the other requirements for *res judicata* have been satisfied, the Court will grant the Motions as to Counts I and III in their entirety and as to all claims in Counts II, IV, and V except those based on the 2019 PHH Letters.

## 2.    New Claims

In the Second Amended Complaint, Mitchell alleges two new statutory causes of actions that she did not assert in *Mitchell I*:  claims for violations of RESPA in Count VI and the MFPA in Count VII.  In considering whether there is identity of causes of action for purposes of *res judicata*, courts must compare the substance of the alleged causes of action, not their form.  *Nash Cty. Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484, 489 (4th Cir. 1981).  Upon such analysis, the Court finds that both of these claims arise out of the same transactions or occurrences underlying the claims actually asserted in *Mitchell I*.

In Count VI, Mitchell alleges violations of RESPA by U.S. Bank and Ocwen arising from improper charges for escrow payments, fees, costs, and other items not legally due under a valid mortgage contract or applicable law, the failure "to timely acknowledge receipt of, respond to, or conduct a reasonable investigation in response to" Mitchell's qualified written requests ("QWRs") or requests for information, SAC ¶ 148, and their improper reporting of Mitchell to credit bureaus and failure to correct Mitchell's account.  These allegations arise from the same transactions or occurrences underlying the claims asserted in *Mitchell I*.  Indeed, the complaint in *Mitchell I* specifically described improper charges imposed on Mitchell, the establishment of an unauthorized escrow account, the QWRs and other communications sent by Mitchell, and Defendants' failure to respond to her requests.   Those allegations were repeated verbatim in the Second Amended Complaint.  The allegations regarding improper reporting to credit agencies are also based on the operative facts underlying the *Mitchell I* complaint, particularly the allegations relating to the *Mitchell I* FCRA claim.

Likewise, the MFPA claim in Count VII arises from the same operative facts underlying *Mitchell I*, particularly its fraud claim.  In the Second Amended Complaint, Mitchell alleges that

Ocwen violated the MFPA by using fraud, deception, and misrepresentations to collect a mortgage debt. Mitchell asserts three broad categories of actions: immoral and unfair overcharging of fees, deception in attempting to collect and foreclose on a debt that was not in default, and misrepresentations as to the accounting relating to the ARM Mortgage Loan. These claims mirror the facts and allegations made by Mitchell in her common law fraud claim in *Mitchell I*, in which Mitchell alleged that the *Mitchell I* Defendants engaged in fraud by, among other things, demanding payments based on false or inflated accounting; making improper, inaccurate, and fraudulent representations on the amounts due; and attempting to foreclose based on alleged non-payment and forged documents without a proper legal basis.

There is no plausible MFPA claim based on the 2019 PHH Letters. Under the MFPA, a "person may not commit mortgage fraud," which includes misstatements, misrepresentations, or omissions knowingly made or used "during the mortgage lending process" with the intent to defraud. Md. Code Ann., Real Prop. §§ 7-401(d)(1)-(3), 7-402. The MFPA also bars mortgage fraud involving the receipt of any proceeds or funds in connection with a fraudulent mortgage closing and the filing in the land records of fraudulent documents related to a mortgage loan. *Id.* § 7-401(d)(4)-(6). The 2019 PHH Letters were not sent as part of the mortgage lending process, which took place in 2005 and involved Fremont, the mortgage originator, not PHH, which did not begin servicing Mitchell's loan on the Property until 2019. The sending of the PHH Letters also did not constitute the receipt of funds in connection with the mortgage closing or the filing of fraudulent documents in land records, which occurred in 2005.

Where Mitchell's RESPA and MFPA claims are based on the same operative facts as those underlying *Mitchell I* relating to the ARM Mortgage Loan and to Defendants' efforts to collect on

this allegedly fraudulent debt, such that the claims "could have been raised in a prior proceeding," the Court finds that these claims are barred by *res judicata*. *See Pueschel*, 369 F.3d at 354.

## III.    Statute of Limitations

After application of *res judicata*, the only remaining claims are Mitchell's new FDCPA, MCDCA, and MCPA claims based on the PHH Letters sent in 2019.  Defendants argue that such claims must be dismissed as time-barred.  The FDCPA provides for a one-year statute of limitations, running from the date of the alleged violation.  15 U.S.C. § 1692k(d).  Defendants argue that any FDCPA claims based on the 2019 PHH Letters are time-barred because they relate to the same debt at issue in the dismissed FDCPA claims, and the FDCPA statute of limitations begins to run for purposes of all subsequent debt collection communications at the time that the first such communication relating to that loan was sent.  Some judges in this district have adopted this rule that multiple communications in violation of the FDCPA collectively constitute a continuing violation that accrues at the time of the first debt collection communication.  *See Bey, v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 316 (D. Md.), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *Fontell v. Hassett*, 870 F. Supp. 2d 395, 404 (D. Md. 2012).  Others, however, have applied the principle that each communication is a discrete FDCPA violation that accrues when it was sent.  *See, e.g.*, *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 501 (D. Md. 2004); *Young v. Thieblot Ryan, P.A.*, No. ELH-11-01562, 2012 WL 6698632, at *5 n.10 (D. Md. Dec. 21, 2012).

This Court concludes that each communication is a separate FDCPA violation that accrues on the date the communication was sent.  First, the plain language of the statute provides that the statute of limitations runs from "the date on which the violation occurs" and makes no mention of an earlier accrual date based on similar violations.  15 U.S.C. § 1692k(d).  Second, the weight of

authority from the United States Courts of Appeals supports this rule.  For example, in *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685 (8th Cir. 2017), the court held that alleged violations of the FDCPA should be "evaluate[d] . . . individually to determine whether any portion of the claim is not barred by the statute of limitations."  *Id.* at 694 (quoting *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1188 (10th Cir. 2013)).  "It does not matter that the debt collector's violation restates earlier assertions—if the plaintiff sues within one year of the violation, it is not barred by § 1692k(d)."  *Id.*  Other circuits have reached the same conclusion.  *See, e.g., Solomon v. HSBC Mortg. Corp.*, 395 F. App'x 494, 497 (10th Cir. 2010) (reversing the district court's ruling that the entirety of the plaintiff's FDCPA claim accrued at the time of a mailing date outside the limitations period even though there were later violations within the limitations period, because "separate communications can create separate causes of action arising from collection of a single debt"); *Purnell*, 303 F. App'x at 301 (holding that to the extent that communications violating the FDCPA because they contain false representations about the character, amount, or legal status of a debt "are alleged to have occurred outside the limitations period, they are barred by the statute of limitations," but that "to the extent that plaintiff can prove that such violations occurred within the limitations period, they are not time-barred").

Third, even if there were a continuing violation theory to be applied, such conventions typically run the statute of limitations from the last violation or improper act, not the first.  *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002) (holding that for a hostile work environment employment discrimination claim under Title VII of the Civil Rights Act of 1964, "[i]n order for the charge to be timely, the employee need only file a charge within 180 or 300 days of *any act* that is part of the hostile work environment") (emphasis added); *Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570, 572 (4th Cir. 1976) (holding that in

20

antitrust conspiracies involving a continual refusal to deal, and thus a continuing violation, "the statute of limitations commences to run from the last overt act causing injury to the plaintiff's business"). Further, for statutes not subject to a continuing violation theory, when there is a series of similar, discrete violations of the statute, the later violations typically are not time-barred even if the earlier ones are. *See Morgan*, 536 U.S. at 113 (holding in a Title VII case that "[t]he existence of past acts and the employee's prior knowledge of their occurrence . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed"); *see also Purnell*, 303 F. App'x at 302 (analogizing the statute of limitations analysis under the FDCPA with the comparable analysis under Title VII).

Finding that all claims based on subsequent communications that violate the FDCPA accrue at the time of the first communication effectively "would immunize debt collectors from later wrongdoing" by providing no compelling incentive to refrain from improper debt collection efforts. *Demarais*, 869 F.3d at 694. Finally, even in *Bey*, the court applied its continuing violation theory only where (1) the subsequent communications are continued efforts to collect the same debt; and (2) the validity of the debt itself is not challenged. *Bey*, 997 F. Supp. 2d at 316-17. Where, as here, Mitchell's FDCPA claims are premised on her challenge of the validity of the debt, such a rule would not even apply.

The PHH Letters were sent on May 31, 2019, June 17, 2019, and September 17, 2019 and thus were all sent within one year of the first complaint in which they were all referenced, the Second Amended Complaint filed on September 30, 2019. Accordingly, the Court finds that Mitchell's FDCPA claims based on these letters are not time-barred. The other FDCPA claims based on communications sent in or before July 2016, already barred by *res judicata*, are also time-

barred. *See Demarais*, 869 F.3d at 694; *Purnell,* 303 F. App'x at 301. Where Defendants referenced the statute of limitations as to the MCPA and MCDCA in a footnote but made no argument separate from the argument relating to the FDCPA, the Court will likewise find that the comparable claims based on the PHH Letters are not time-barred.

## IV.    FDCPA

The Court next considers whether Mitchell has stated plausible FDCPA claims arising from the three PHH Letters sent in 2019. To state a valid FDCPA claim, Mitchell must plausibly allege that (1) Defendants are debt collectors as defined by the FDCPA; (2) she was the "object of collection activity" arising from a consumer debt, such as a communication in connection with the collection of an outstanding debt; and (3) Defendants have engaged in an act or omission prohibited by the FDCPA. *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 333 n.3 (4th Cir. 2012); *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012). Beyond the statute of limitations, the only other arguments asserted by Defendants for dismissal of the FDCPA claims relating to the PHH Letters are that (1) certain Defendants are not debt collectors under the FDCPA; and (2) communications sent to an attorney are not actionable under the statute.

### A.    Debt Collector

Mitchell asserts in the Second Amended Complaint that each Defendant is a "debt collector" under 15 U.S.C. § 1692a(6) and is jointly and severally liable under the FDCPA, because PHH regularly collects debts as an agent for the other Defendants. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In determining whether an individual or entity qualifies as a debt collector

under the FDCPA, because those that collect debt for their own account do not qualify as debt collectors, "[a]ll that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for another." *Henson v. Santander Consumer USA Inc.,* 137 S. Ct. 1718, 1721-22 (2017).

Defendants do not dispute that PHH and Brock & Scott are debt collectors under the FDCPA. PHH took over as the loan servicer for the ARM Mortgage Loan in 2019, multiple years after the loan went into default in 2013 and the foreclosure action was initiated in 2015. *See Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359, 361 (6th Cir. 2012) (holding that a loan servicer qualifies as a debt collector if the debt was assigned for servicing after the alleged default occurred). As the substitute trustee, Brock & Scott is also a debt collector. *See McCray v. Fed. Home Loan Mortg. Corp.*, 839 F.3d 354, 361 (4th Cir. 2016) (holding that substitute trustees were debt collectors under the FDCPA because their actions in seeking foreclosure after default qualified as debt collection activity).

Defendants argue that Ocwen, Ocwen Financial, U.S. Bank, and U.S. Bank Trustee are not debt collectors under the FDCPA. As to Ocwen and Ocwen Financial, Defendants argue that the FDCPA excludes from the definition of a debt collector a loan servicer where the loan "was not in default at the time it was obtained" by the servicer. 15 U.S.C. § 1692a(6)(F)(iii). Where Mitchell alleges that Ocwen began servicing the ARM Mortgage Loan in September 2010, before Mitchell defaulted on her loan in 2013, it follows that Ocwen and Ocwen Financial began servicing the ARM Mortgage Loan before it went into default and thus do not appear to meet the definition of debt collector. Since Mitchell has alleged that U.S. Bank is the assignee to the ARM Mortgage Loan and also serves as trustee to the trust which holds legal title through the loan to the Property, Defendants argue that any debt that is collected for U.S. Bank is done so "for its own account"

23

such that neither U.S. Bank nor U.S. Bank Trustee is a "debt collector" under the FDCPA. *See Henson*, 137 S. Ct. at 1721. Mitchell counters by asserting that after the ARM Mortgage Loan was subject to securitization, U.S. Bank and U.S. Bank Trustee no longer hold the Note, such that the debt collection efforts were not conducted on their behalf.

The Court need not decide these issues because regardless of whether these Defendants qualify as debt collectors, Defendants do not address Mitchell's allegation in the Second Amended Complaint that these entities can nevertheless be held jointly and severally liable for FDCPA violations by PHH under an agency theory. In the absence of such an argument, the Court will not dismiss the remaining FDCPA claims against U.S. Trust, U.S. Trust Trustee, Ocwen Financial, and Ocwen based on the argument that they do not meet the definition of debt collector.

## B. Attorney Recipient

Defendants also seek dismissal of the FDCPA claims based on the PHH Letters because they were sent to Mitchell "care of" Mitchell's attorney. A letter sent to an attorney can still be the subject of an FDCPA claim, particularly where it is addressed primarily to the debtor. *See, e.g.*, *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 773 (7th Cir. 2007); *cf. Guerrero v. RJM Acquisitions, LLC*, 499 F.3d 926, 938-39 (9th Cir. 2007) (finding no FDCPA violation based on communications sent "only" to a debtor's attorney and "targeted exclusively at a debtor's attorney"). In the Second Amended Complaint, Mitchell alleges FDPCA violations under 15 U.S.C. § 1692d, which prohibits "any conduct the natural consequence of which is to harass, oppress, or abuse any person"; under § 1692e, which prohibits the use of "false, deceptive, or misleading representation or means"; and under § 1692f, which prohibits "unfair or unconscionable means to collect or attempt to collect any debt." In terms of whether a communication can be deemed to be harassing, deceptive, or intimidating, courts apply a higher

standard "when the conduct is aimed at a lawyer than when it is aimed at a consumer" because "a lawyer is less likely to be deceived, intimidated, harassed." *Evory*, 505 F.3d at 774; *see Sayyed v. Wolpoff & Abramson, LLP*, 733 F. Supp. 2d 635, 642 (D. Md. 2010) ("[A]t least as to certain communications, the standard of review differs if the representations at issue are made to a consumer's attorney, as opposed to the consumer."). Such a rule is sensible because the FDCPA "is intended for the protection of unsophisticated consumers." *Evory*, 505 F.3d at 774.

Defendants claim that Mitchell's FDCPA claims based on the PHH Letters necessarily fail because they were sent "care of" David Moore, Mitchell's attorney in the foreclosure proceedings, *Mitchell I*, and the present case, on the grounds that they "would not deceive" Moore, a competent attorney familiar with the relevant areas of law. Mot. Dismiss at 18, ECF No. 45-1. However, while "[a] sophisticated person is less likely to be either deceived or misled than an unsophisticated one," that "is less true if a statement is false" because a false claim of fact made in a letter "may be as difficult for a lawyer to see through as a consumer." *Evory*, 505 F.3d at 775. Thus, false misrepresentations may still be actionable even when directed to an attorney. *See id.* Here, the FDCPA claims relating to the PHH Letters are most fairly construed as claims based on false statements about the validity of the debt, as Mitchell is alleging that the letters are based on the false claim that the ARM Mortgage Loan was valid and not based on fraud, and that Defendants had a legal right to collect the debt and to foreclose. *See* 15 U.S.C. § 1692e(2)(A) (prohibiting false representation of the "character . . . or legal status of any debt"). Since an attorney is not necessarily better suited than a consumer to "see through" such statements, *Evory*, 505 F.3d at 775, and in any event the PHH Letters were primarily addressed to Mitchell, the fact that they were sent to her attorney's address does not provide a basis to dismiss this claim at this stage of the case.

V.      **MCDCA and MCPA**

Defendants have also argued that Mitchell has failed to state plausible claims for relief under the MCDCA and MCPA.  Where the only remaining claims relate to the PHH Letters, the Court will limit its analysis to claims based on those letters.  As relevant here, under the MCDCA, a debt collector may not, in collecting or attempting to collect a debt, "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist."  Md. Code Ann., Com. Law § 14-202(8).  The MCPA provides that a violation of the MCDCA is an "[u]nfair, abusive, or deceptive trade practice[]" that also violates the MCPA.  Md. Code Ann., Com. Law § 13-301(14)(iii). Accordingly, the two counts can be analyzed together.

Defendants' only argument relating to the MCDCA is that there were insufficient facts to support the conclusions that Defendants did not possess the right to collect the debts sought and that they attempted to collect the debts knowing that they lacked the right to do so.  Where the allegations on both counts incorporated the prior allegations relating to the PHH Letters, there is sufficient particularity on the time, place, and contents of the communications.  These letters can fairly be construed as misrepresenting the validity of the ARM Mortgage Loan, and based on the detailed allegations of fraud relating to the loan documents, which are supported by the state courts' findings on that issue, Mitchell has plausibly alleged that Defendants lacked the right to enforce the debt.

As for knowledge, the allegation that as of 2017, the Maryland Court of Special Appeals had found that the ARM Mortgage Loan documents were forged or fraudulent, supports the inference that Defendants knew they lacked the right to enforce the debt at the time that the PHH Letters were sent in 2019.  Notably, the last of the PHH Letters was sent on September 17, 2019, after the September 5, 2019 ruling by the Circuit Court that the ARM Mortgage Loan documents

were forged and that Defendants had no right to foreclose on the Property, yet PHH persisted in seeking to collect the debt. Mitchell has thus alleged ample facts to support the conclusion that Defendants knew that they lacked the right to enforce the debt at the time of PHH Letters. The Motion will therefore be denied as to claims based on the PHH Letters under both the MCDCA and the MCPA.

## VI.    Rule 11

Finally, Defendants seek sanctions under Federal Rule of Civil Procedure 11 based on the claim that the Second Amended Complaint had "absolutely no chance of success under the existing precedent." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991) (citations omitted). As relevant here, under Rule 11, sanctions are available when a claim is not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" or is "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b), (c). "[M]aintaining a legal position to a court is only sanctionable when, in applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002) (quoting *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998)).

The Court declines to grant Defendant's Rule 11 motion because it does not conclude that there was no reasonable basis by which Mitchell's attorneys could believe that the operative complaint in this case was actionable. Although the majority of Mitchell's claims will be dismissed based on *res judicata*, Mitchell asserted new facts and allegations based on newly discovered evidence, including that her signature was forged and that harassing debt collection efforts were documented. Such evidence formed the basis of the state court's finding of fraud

27

relating to the ARM Mortgage Loan and dismissal of the foreclosure proceedings.  Although Mitchell has been unable to establish a legal basis to parlay this favorable evidence into a new cause of action, where the state court findings reveal outrageous misconduct in the formation of the ARM Mortgage Loan that Defendants continue to insist on seeking to enforce, the Court does not conclude that her effort to do so was unreasonable.  Indeed, the Court has found that certain other new evidence, the PHH Letters, supports viable claims under the FDCPA, MCDCA, and MCPA.  Accordingly, the Court will deny the request for sanctions.

**CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss will be GRANTED IN PART and DENIED IN PART.  The Motions will be denied as to the FDCPA, MCDCA, and MCPA claims relating to the 2019 letters from PHH to Mitchell.  The Motions will also be denied as to Rule 11 sanctions.  The Motion will be granted as to all other claims.  A separate Order shall issue.

Date:  June 8, 2020                        /s/ *Theodore D. Chuang*
                                          THEODORE D. CHUANG
                                          United States District Judge