**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| _____ ) | |
| RENE MITCHELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 19-cv-02225-LKG |
| v. ) | |
| ) | Dated: August 11, 2022 |
| BROCK & SCOTT, PLLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

### MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

In this civil action, plaintiff, Rene Mitchell, brings Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201-14-204, and Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101-13-501d, claims against certain defendant entities that were involved in the servicing of a mortgage loan to finance the purchase of her home located in Bowie, Maryland. *See generally* 2d Am. Compl., ECF No. 22. The parties have filed cross-motions for summary judgment on plaintiff's claims. Def. Mot., ECF No. 163; Def. Mem., ECF No. 163-1; Brock & Scott. Mot., ECF No. 159; Brock & Scott Mem., ECF No. 160; Pl. Mot., ECF No. 170, Pl. Mem., ECF No. 173-1. These motions are fully briefed. Def. Resp., ECF No. 177; Def. Reply, ECF No. 177; Pl. 1st Resp., ECF No. 168; Pl. 2d Resp., ECF No. 169; Pl. Reply, ECF No. 180; Brock & Scott Reply, ECF No. 179. No hearing is necessary to resolve these motions. *See* L.R. 105.6 (D. Md. 2021). For the reasons that follow, the Court: (1) **GRANTS** defendants' motions for summary judgment; (2) **DENIES** plaintiff's cross-motion for summary judgment and (3) **DISMISSES** the second amended complaint.

1

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

Plaintiff, Rene Mitchell, brings FDCPA, MCDCA and MCPA claims against defendants, U.S. Bank National Association ("USB"); US Bank as Trustee for Mastr Asset Backed Securities Trust ("USB as Trustee"); Ocwen Loan Servicing, LLC ("Ocwen"); OCWEN Financial Corporation ("OFC"); PHH Mortgage Corporation ("PHH MC"); and Brock & Scott, PLLC ("Brock & Scott") related to these defendants' involvement in the servicing of a mortgage loan (the "Mortgage Loan") to finance the purchase of her home.  *See generally* 2d Am. Compl.

As background, plaintiff resides in Bowie, Maryland, and she is the borrower under the Mortgage Loan.  *Id.* at ¶¶ 1, 3, 25.  Defendant USB is a Minnesota-based national banking association.  *See id.* at ¶ 26; *see also* Defendants' Statement of Undisputed Material Facts ("SOF") at ¶ 9.

Defendant USB as Trustee is the beneficial owner and holder with rights to the Mortgage Loan.  SOF at ¶ 8.  Defendant Ocwen is the loan servicer that serviced the Mortgage Loan during the period August 31, 2010, to October 4, 2018.  *Id.* at ¶ 11.

Defendant PHH MC is the current servicer of the Mortgage Loan and the successor by merger to Ocwen.  *Id*. at ¶¶ 12-15.  Defendant OFC is the parent entity of PHH MC.  *Id.* at ¶ 16. Defendant Brock & Scott is a multi-state law firm with its principal office located in North Carolina.  *See* Brock & Scott Mem. at 2.

<u>The Mortgage Loan</u>

In 2005, plaintiff applied for, and was approved for, a Mortgage Loan to purchase her home located at 9003 Harness Way in Bowie, Maryland.  2d Am. Compl. at ¶¶ 38-39.  Plaintiff financed this purchase in part with a first purchase money loan in the amount of $444,728.00. Def. Mem. at 2.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the second amended complaint ("2d Am. Compl.") and exhibits thereto ("2d Am. Compl. Ex."); defendants' motion for summary judgment and the memorandum in support thereof ("Def. Mot.;" "Def. Mem."); defendants' statement of undisputed material facts ("SOF"); defendant Brock & Scott's motion for summary judgment and the memorandum in support thereof ("Brock & Scott Mot.;" "Brock & Scott Mem."); and plaintiff's cross-motion for summary judgment and the memorandum in support thereof ("Pl. Mot.;" "Pl. Mem.").  Unless otherwise indicated, the facts recited herein are undisputed.

On August 31, 2010, the servicing of the Mortgage Loan transferred from HomEq to Ocwen. *Id.* at 3-4.  And so, Ocwen began servicing the Mortgage Loan on behalf of U.S. Bank, Trustee on August 31, 2010.  *Id.* at 11.  On August 31, 2010, plaintiff was current on the Mortgage Loan and her next monthly payment was due in September 2010.[2]  SOF at ¶¶ 24-25.

Plaintiff contends that, on September 9, 2010, Ocwen informed her that the Mortgage Loan was an adjustable-rate mortgage and that she had a past due amount and a shortage in her escrow account.  Pl. Mem. at 3.  Plaintiff maintains that the terms of the Mortgage Loan were improperly changed from a fixed rate to an adjustable-rate mortgage without her knowledge or consent. 2d. Am. Compl. at ¶ 3.  Given this, plaintiff stopped making payments on the Mortgage Loan in January 2013.  SOF at ¶ 33.

### The Three Letters

PHH MC, as successor in interest to Ocwen, began servicing the Mortgage Loan in 2018. *Id.* at ¶¶ 12-15; Verdooren Decl. at ¶¶ 47-51.  On May 31, 2019, PHH MC sent plaintiff a letter informing her that she was required to provide evidence of hazard insurance for the property and that if she failed to do so, PHH MC would obtain an insurance policy at her expense.  SOF at ¶ 17.  Thereafter, on June 17, 2019, PHH MC sent a notice to plaintiff informing her of certain changes to her mortgage interest rate and informing plaintiff of the monthly payment amount that would be due starting in September 2019.  *See id.*  Lastly, on September 17, 2019, PHH MC sent a third letter to plaintiff regarding her missed mortgage payments that detailed various borrower assistance options and foreclosure alternatives.  *See id.*

### The Circuit Court Litigation

After defendants commenced a foreclosure action with regard to the property secured by the Mortgage Loan, plaintiff brought a civil action in the Circuit Court for Prince George's County challenging the foreclosure.  *See* Def. Mot. Ex. H.  On September 5, 2019, the Circuit Court for Prince George's County determined that plaintiff "has established that the lien and lien instrument are invalid, and that [defendants] have no right to foreclose on an adjustable-rate mortgage."  *BSPLLC v. Mitchell*, No. CAEF15-20853, at *6 (Prince George's County Cir. Ct.,

---

[2] Plaintiff maintains that the Mortgage Loan was delinquent when Ocwen began servicing the loan.  Pl. Mem. at 3.

Sept. 5, 2019) (Memorandum Opinion and Order granting Ms. Mitchell's motion to dismiss). Specifically, the Circuit Court determined that the original note and deed of trust for the Mortgage Loan contained plaintiff's signature, but that the parties had canceled the adjustable-rate mortgage in lieu of a fixed-rate mortgage at the July 11, 2005 closing.  *See id.* at *6-7.  And so, the Circuit Court concluded that the adjustable-rate mortgage lien is invalid and the substitute trustees had no right to foreclose on plaintiff's property.  *See id.* at *6.  On February 26, 2021, the Maryland Court of Special Appeals affirmed the Circuit Court's decision.[3]  SOF at ¶ 59.

In this action, plaintiff contends that defendants improperly sent her "numerous false and misleading communication[s]," including the aforementioned three letters from PHH MC, because the Mortgage Loan had been declared invalid.  Pl. Mem. at 8, 12-13.  And so, plaintiff seeks, among other things, to recover compensatory and punitive damages from defendants for alleged violations of the FDCPA, MCDCA and MCPA.  *See* 2d Am. Compl. at Prayer for Relief.

### B.   Procedural Background

Plaintiff commenced this action on July 31, 2019.  *See generally* Compl., ECF No. 1. Plaintiff amended her complaint on August 14, 2019, and September 30, 2019, respectively.  *See* Am. Compl., ECF No. 5; 2d Am. Compl.

On January 3, 2020, Ocwen, PHH MC and USB filed a motion to dismiss this matter pursuant to Fed. R. Civ. P. 12(b)(6) and Rule 11.  *See generally* Def. Mot. to Dismiss, ECF No. 45.  On January 27, 2020, Brock & Scott filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6).  *See generally* Brock & Scott Mot. to Dismiss, ECF No. 52.  On June 8, 2020, the Court issued a Memorandum Opinion and Order granting in part and denying in part defendants' motions to dismiss.  *See* Jun. 8, 2020, Mem. Op. & Order, ECF Nos. 55, 56.

On January 31, 2022, Brock & Scott, Ocwen, PHH MC, OFC, USB, and USB as Trustee filed motions for summary judgment and memoranda in support thereof (ECF Nos. 159 and 163, respectively).  *See generally* Def. Mot.; Def. Mem; Brock & Scott Mot.; Brock & Scott Mem. On March 15, 2022, plaintiff filed responses in opposition thereto and a cross-motion for summary judgment.  *See generally* Pl. 1st Resp.; Pl. 2d Resp.; Pl. Mot.; Pl. Mem.  On April 1,

---

[3] PHH MC represents that it did not learn of the Circuit Court's decision until September 17, 2019.  SOF at ¶ 57; Def. Mot. Ex. H.

4

2022, Brock & Scott, Ocwen, OFC, PHH MC, USB, and USB as Trustee filed replies in support of their respective motions for summary judgment and responses in opposition to plaintiff's cross-motion for summary judgment.  Def. Resp.; Def. Reply; Brock & Scott Reply.  Plaintiff filed a reply in support of her motion for summary judgment on April 18, 2022.  *See* Pl. Reply.

The parties' cross-motions for summary judgment having been fully briefed, the Court resolves the pending motions.

## III.   LEGAL STANDARDS

### A.   Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co*., 773 F.2d 592, 595 (4th Cir. 1985).  In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993).  But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim.  *See Celotex Corp.*, 477 U.S. at 322-23.  Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Id.* at 323.  And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Liberty Lobby*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc*., 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

When faced with cross-motions for summary judgment, the Court must review each motion separately on its own merits "to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997) (citation and internal punctuation omitted)). When considering each individual motion, the Court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing that motion. *Id.* (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

### B.    FDCPA Claims

To prevail on a Federal Debt Collection Practices Act claim, a plaintiff must prove that: (1) defendants are "debt collectors" as defined by the FDCPA; (2) plaintiff was the "object of collection activity" arising from a consumer debt; and (3) defendants were engaged in an act or omission prohibited by the FDCPA. *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 333 n.3 (4th Cir. 2012). The FDCPA defines "debt collector" as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be due another." 15 U.S.C. § 1692a(6). The FDCPA excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." *Id.* at § 1692a(6)(F)(iii). And so, the Fourth Circuit has held that, when an entity collecting a debt on behalf of another has obtained the right to do so before the debt became in default, that entity is not a "debt collector" under the FDCPA. *See Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016) ("To simplify, this exclusion means that a person collecting nondefaulted debts on behalf of others is not a debt collector. This exclusion was intended by Congress to protect those entities that function as loan servicers

6

for debt not in default."), *aff'd*, 137 S. Ct. 1718 (2017); *see also Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, No. 12-752, 2015 WL 2455811, at *10 (D. Md. May 22, 2015) ("Generally speaking, entities servicing or collecting a debt they were assigned before default are considered 'creditors' under the Act.").

### C.   MCPA Claims

The Maryland Consumer Protection Act prohibits "unfair . . . or deceptive trade practice[s]." Md. Code Ann., Com. Law § 13-303.  Under Maryland law, a private party bringing a claim under the MCPA must demonstrate:  (1) an unfair or deceptive practice or misrepresentation; (2) that is relied upon; and (3) causes them actual injury.  *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citation omitted).

### D.   MCDCA Claims

Lastly, the Maryland Consumer Debt Collection Act prohibits 11 categories of conduct relating to debt collection, including prohibiting a debt collector from claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist.  *See* Md. Code Ann., Com. Law § 14-202(1)-(11).  This Court has held that, to prove such a claim, a plaintiff must show that:  (1) the defendant did not possess the right to collect the amount of debt sought and (2) the defendant attempted to collect the debt knowing that they lacked the right to do so.  *See Pruitt v. Alba Law Grp., P.A.*, No. 15-0458, 2015 WL 5032014, at *3 (D. Md. Aug. 24, 2015).

## IV.   LEGAL ANALYSIS

The parties have filed cross-motions for summary judgment on the issues of whether plaintiff can prevail on the remaining FDCPA, MCDCA and MCPA claims in this action.  *See generally* Def. Mot.; Brock & Scott Mot.; Pl. Mot.

In their motions for summary judgment, defendants first argue that plaintiff's FDCPA claim must fail, because:  (1) they are not "debt collectors" under the FDCPA; (2) USB, USB as Trustee, Ocwen, and OFC cannot be held liable for PHH MC's actions under an agency theory; and (3) the three letters sent by PHH MC do not constitute acts or conduct that violate the FDCPA.  Def. Mem. at 9-20.  Second, defendants argue that they are entitled to judgment in their favor with regards to plaintiff's MCDCA claim, because:  (1) USB, Ocwen and OFC are not "debt collectors" under the MCDCA; (2) the three letters sent by PHH MC do not violate the

MCDCA; and (3) the undisputed material facts show that PHH MC lacked either knowledge, or a reckless disregard, regarding the falsity of a claimed right. *Id.* at 25-29.

In addition, defendants argue that plaintiff cannot prevail on her MCPA claim, because the undisputed material facts show that there was no intentional misrepresentation on the part of defendants and plaintiff also cannot show that she relied upon any such misrepresentations. *Id.* at 29-32. Lastly, Brock & Scott argues in its motion for summary judgment that all claims against it should be dismissed, because plaintiff fails to either identify how Brock & Scott was involved with the three letters sent by PHH MC, or to support her claims against Brock & Scott in this action. Brock & Scott Mem. at 2-3. And so, for all of these reasons, defendants request that the Court enter summary judgment in their favor and dismiss this action. Def. Mem. at 32; Brock & Scott Mem. at 5-6.

Plaintiff counters in her response in opposition and cross-motion that: (1) there are disputed material facts regarding whether defendants are "debt collectors" under the FDCPA and the MCDCA; (2) PHH MC's letters were false, deceptive, misleading and not bona fide errors; and (3) the undisputed material facts show that defendants sent numerous false, deceptive, and misleading communications to plaintiff in violation of the MCPA. Pl. 2d Resp. at 9-14. Plaintiff also argues that she is entitled to summary judgment in her favor on her claims, because: (1) defendants are "debt collectors" under the FDCPA and the MCDCA; (2) she was the object of a "collection activity" arising from a consumer debt; (3) the undisputed material facts show that defendants have engaged in an act or omission prohibited by the FDCPA; and (4) the undisputed material facts also show that defendants violated the MCDCA and MCPA. Pl. Mem. at 9-14. In addition, plaintiff argues that there are material facts in dispute regarding Brock & Scott's involvement with the events that gave rise to this case. Pl. 1st Resp. at 2-6. And so, plaintiff requests that the Court deny defendants' motions for summary judgment and enter summary judgment in her favor. Pl. Mem. at 15; Pl. 2d Resp. at 15.

For the reasons that follow, the undisputed material facts in this case show that Brock & Scott was not involved with the three letters that give rise to plaintiff's remaining claims in this case. The undisputed material facts similarly show that plaintiff cannot prevail on her FDCPA claim, because the remaining defendants are not "debt collectors" under that statute. Plaintiff's MCDCA claim is also not viable, because the undisputed material facts make clear that Ocwen,

USB, USB as Trustee, and OFC are not "debt collectors" under the MCDCA, and that PHH MC did not send any of the letters at issue in this case with either knowledge, or a reckless disregard, of the fact that the claimed rights asserted in these letters did not exist. Lastly, the undisputed material facts also show that none of the defendants made any intentional misrepresentations of fact in the letters to substantiate plaintiff's MCPA claim. And so, the Court: (1) **GRANTS** defendants' motions for summary judgment; (2) **DENIES** plaintiff's cross-motion for summary judgment and (3) **DISMISSES** the complaint.

> **A.    The Undisputed Material Facts Show That Brock
> & Scott Was Not Involved With PHH MC's Three Letters**

As an initial matter, Brock & Scott persuasively argues that all claims against it should be dismissed, because plaintiff has not shown that Brock & Scott had any involvement with the three letters that provide the basis for her FDCPA, MCDCA and MCPA claims.

Plaintiff alleges in this action that defendants violated the FDCPA, MCDCA and MCPA by improperly sending her false and misleading communications, including three letters sent by PHH MC to plaintiff in 2019. 2d Am. Compl. at ¶¶ 81-112, 122-42; *see also* Pl. Mem. at 4, 12. But, it is undisputed that Brock & Scott did not send the letters at issue. *See generally* Brock & Scott. Mem.; Pl. 1st Resp; *see also* Pl. 1st Resp. Ex. 1 (not disputing that Brock & Scott was not involved with the 2019 letters). There is also no evidence before the Court to show that Brock & Scott was acting as either an agent of, or in concert with, PHH MC when PHH MC sent these letters to plaintiff. *See* Brock & Scott Mem. at 2-3; Brock & Scott Mot. Ex. 2, ECF No. (affidavit of John A. Ansell, III).

Indeed, while plaintiff contends that Brock & Scott offered advice to PHH MC regarding the content of the three letters, plaintiff fails to substantiate this allegation with any facts or evidence. *See generally* Pl. 1st Resp.; *see also* Pl. 1st Resp. Ex. 1 (not disputing that Brock & Scott was not involved with the 2019 letters). The affidavit of John A. Ansell, III also makes clear that Brock & Scott "did not serve as counsel, nor was consulted in any way, with respect to the three . . . letters sent to Rene Mitchell in 2019 by PHH." Brock & Scott Mot. Ex. 2 at ¶ 14. Plaintiff's bald suggestion that there are material facts in dispute regarding Brock & Scott's involvement with the three letters, without more, is also not sufficient to defeat Brock & Scott's motion for summary judgment at this mature stage of this litigation. Pl. 1st Resp. at 4. Given

this, plaintiff has not shown that Brock & Scott had any involvement with the three letters to
support her FDCPA, MCDCA and MCPA claims against Brock & Scott.  And so, the Court
GRANTS Brock & Scott's motion for summary judgment with regards to these claims.  Fed. R.
Civ. P. 56.

  **B.**  **Plaintiff Cannot Prevail On Her FDCPA Claim**
     **Because The Remaining Defendants Are Not "Debt Collectors"**

  Turning to the merits of plaintiff's claims against the remaining defendants, the
undisputed material facts show that plaintiff cannot prevail on her FDCPA claim, because these
defendants are not "debt collectors" under the FDCPA.  To prevail on her FDCPA claim,
plaintiff must show, among other things, that the defendants are "debt collectors' as defined by
that statute.  *Boosahda*, 462 F. App'x at 333 n.3.  The FDCPA defines a "debt collector" as "any
person who uses any instrumentality of interstate commerce or the mails in any business the
principal purpose of which is the collection of any debts, or who regularly collects or attempts to
collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15
U.S.C. § 1692a(6).  But, the statute excludes from this definition any person attempting to collect
a debt owed to another "which was not in default at the time it was obtained by such person."
*See id.* at § 1692a(6)(F)(iii).  And so, the Supreme Court has held that a "debt collector" under
the FDCPA is an agent who attempts to collect a defaulted debt for the debt's owner, rather than
for itself.  *Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718, 1721 (2017).

  The remaining defendants in this action do not satisfy the definition of a "debt collector"
under the FDCPA for several reasons.  First, the undisputed material facts in this case show that
USB as Trustee is not a "debt collector" under the FDCPA, because any collection actions by
USB as Trustee related to plaintiff's Mortgage Loan were undertaken for its own account.  In
this regard, the parties do not dispute that USB as Trustee has held ownership rights to the
Mortgage Loan since December 2005.  SOF at ¶¶ 7-8; *see generally* Pl. Resp.  Given this, any
efforts by USB as Trustee to collect plaintiff's debt under the Mortgage Loan cannot constitute
the action of a "debt collector" under the FDCPA.  *See Henson*, 137 S. Ct. at 1721.

  The undisputed material facts also show that USB and OFC are not a "debt collector" as
contemplated by the FDCPA, because there are no facts or evidence in this case to show that
these two defendants took any action with regard to plaintiff's Mortgage Loan.  Indeed, there is

no dispute that USB and OFC did not have any involvement with the three letters sent by PHH MC to plaintiff in 2019.  Def. Mem. at 10, 13; *see generally* 2d Am. Compl; Pl. 2d Resp.  And so, neither of these defendants can be a "debt collector" under the FDCPA. 15 U.S.C. § 1692; *Henson*, 137 S. Ct. at 1721.

The undisputed material facts similarly show that Ocwen is not a "debt collector" under the FDCPA, because the Mortgage Loan was not in default when Ocwen began servicing this loan in 2010.  There is no dispute in this case that Ocwen began servicing the Mortgage Loan in August 2010, and that the Mortgage Loan was not in default at that time.  SOF at ¶¶ 11, 25; *see generally* Pl. Resp.  As the Supreme Court held in *Henson v. Santander Consumer USA, Inc*., a "debt collector" under the FDCPA is an agent who attempts to collect a *defaulted* debt for the debt's owner, rather than for itself.  *Henson*, 137 S. Ct. at 1721 (emphasis supplied).  Because it is undisputed that the Mortgage Loan was not in default when Ocwen began servicing this loan in 2010, Ocwen is not a "debt collector" under the FDCPA.  *See id*.

Lastly, the undisputed material facts also make clear that PHH MC is not a "debt collector" under the FDCPA, because it acquired the Mortgage Loan via a merger with Ocwen. While this Court has not previously addressed the question of whether an entity that obtains a debt through a merger with a previous creditor is a "debt collector" under the FDCPA, other courts have routinely held that a person who acquires a debt via merger is not a "debt collector" under this statute.  For example, the United States Court of Appeals for the Fifth Circuit held in *Brown v. Morris* that, where an entity acquires a debt through a merger with a previous creditor, rather than through a specific assignment or transfer, the debt was not obtained while it was in default; and so, the entity is not a "debt collector" under the FDCPA.  *See Brown v. Morris*, 243 F. App'x 31, 34-35 (5th Cir. 2007) (holding that a mortgage servicer who obtains a loan through its merger with a previous creditor cannot "obtain" a loan it acquires through such a merger); *see also Bracken v. Bank of Am., N.A.*, No. 14-1814, 2014 WL 7369570, at *5 (D.S.C. Dec. 29, 2014).  Similarly here, it is undisputed that PHH MC's predecessor in interest—Ocwen—began servicing the Mortgage Loan in 2010, when this loan was not in default.  SOF at ¶¶ 9-15; Def. Mem. at 11; *see also Brown*, 243 F. App'x at 34-35.  The undisputed material facts also show that PHH MC acquired the Mortgage Loan in October 2018 via a merger with Ocwen, rather than via a specific assignment or transfer of a debt.  SOF at ¶¶ 9-15; Def. Mem. at 11.  Given this, PHH MC cannot be a "debt collector" under the FDCPA.

11

Because the undisputed material facts show that none of the defendants are debt collectors under the FDCPA, plaintiff cannot prevail on her FDCPA claims.  *See Boosahda*, 462 F. App'x at 333 n.3.  And so, the Court GRANTS defendants' motion for summary judgment and DENIES plaintiff's cross-motion for summary judgment on this claim.  Fed. R. Civ. P. 56.

### C.        Plaintiff Cannot Prevail On Her MCDCA Claim

The undisputed material facts also make clear that plaintiff cannot prevail on her MCDCA claim, because:  (1) USB, USB as Trustee, Ocwen, and OFC are not "debt collectors" under the MCDCA and (2) plaintiff has not shown that PHH MC made a knowing or reckless misrepresentation of a claimed right in the three letters at issue in this case.

First, defendants USB, USB as Trustee, Ocwen, and OFC persuasively argue that they are not "debt collectors" under the MCDCA.  As is the case with plaintiff's FDCPA claim, plaintiff must show, among other things, that defendants are "debt collectors" as defined by the MCDCA to prevail on her MCDCA claim.  *See Long v. Pendrick Cap. Partners II, LLC*, 374 F. Supp. 3d 515, 537-38 (D. Md. 2019).  Plaintiff cannot do so here with regards to USB, Ocwen, and OFC, because the undisputed material facts show that these defendants did not collect or attempt to collect a debt from plaintiff.

In this regard, the MCDCA defines a "debt collector" as a "person collecting or attempting to collect an alleged debt arising out of a consumer transaction."  Md. Code Ann., Com. Law § 14-201(b).  But, as discussed above, the undisputed material facts show that neither USB, USB as Trustee, Ocwen, nor OFC made any attempt to collect the debt associated with the Mortgage Loan at issue in this case.  SOF at ¶¶ 7-8, 11, 25; Def. Mem. at 10-11.  In fact, plaintiff points to no facts or evidence to show that any of these defendants sent the three letters at issue, or that these defendants otherwise attempted to collect a debt arising out of the Mortgage Loan. *See generally* Pl. Mem.; Pl. 2d Resp.  Given this, plaintiff cannot show that USB, USB as Trustee, Ocwen, and OFC are "debt collectors" under the MCDCA.  *See* Md. Code Ann., Com. Law § 14-201(b).

While the parties do not dispute that PHH MC is a "debt collector" as defined by the MCDCA, the undisputed material facts, nonetheless, show that plaintiff cannot prevail on her MCDCA claim against PHH MC because PHH MC did not have knowledge that the claimed rights in its three letters to plaintiff did not exist.  To prevail on her MCDCA claim, plaintiff

must show, among other things, that PHH MC either had knowledge that the claims asserted in the three letters did not exist, or that PHH MC had a reckless disregard as to the truth or falsity of the information contained in these letters. *See Pruitt v. Alba Law Grp., P.A.,* No. 15-0458, 2015 WL 5032014, at *3 (D. Md. Aug. 24, 2015); *Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F. Supp. 2d 471, 475 (D. Md. 2004).

The undisputed material facts in this case show that plaintiff cannot satisfy her burden. Plaintiff alleges in this case that PHH MC had knowledge that the claims asserted in the three letters did not exist, because the Mortgage Loan was ruled invalid by the Circuit Court for Prince George's County. Pl. 2d Resp. at 2. But, the undisputed material facts show that PHH MC exercised due diligence in determining the status of the Mortgage Loan before sending these letters to plaintiff. Notably, it is undisputed that PHH MC performed an extensive review of the Mortgage Loan and the records from the loan's prior loan servicers in 2018, to ensure that the Mortgage Loan was valid. SOF at ¶¶ 52, 54; Def. Mem. at 28-29. This review occurred before PHH MC sent the three letters to plaintiff.[4] SOF at ¶¶ 17, 52, 54.

As plaintiff correctly observes, the evidence before the Court does show that the Circuit Court for Prince George's County found the Mortgage Loan to be invalid on September 5, 2019. Pl. 2d Resp. at 2; Def. Mot. Ex. H. But, PHH MC sent its first two letters to plaintiff before this ruling—on May 31, 2019, and June 17, 2019, respectively. SOF at ¶ 17.

The facts regarding PHH MC's final letter to plaintiff are a little more problematic under the MCDCA. There is no dispute that the Circuit Court's ruling on the validity of the Mortgage Loan occurred 12 days before PHH MC sent its third and final letter to plaintiff on September 17, 2019. Def. Mot. Ex. H.; SOF at ¶ 17. But, PHH MC represents that it did not become aware of the Circuit Court's ruling until September 17, 2019—the same day the third letter was sent— when its attorneys received a copy of the ruling by mail. SOF at ¶ 57; Ex. H; *see also BSPLLC v. Mitchell*, No. CAEF15-20853, at *6 (Prince George's County Cir. Ct., Sept. 5, 2019) (Memorandum Opinion and Order granting Ms. Mitchell's Motion to Dismiss); Def. Mem. at 17-18. Plaintiff neither puts forward any facts or evidence to dispute PHH MC's representation

---

[4] Plaintiff argues that there are material facts in dispute about whether the defendants are debt collectors under the FDCPA, but she fails to identify the allegedly disputed material facts, or to support this argument with any evidence. *See generally* Pl. Mem.; Pl. 2d Resp.

about when it learned of the Circuit Court's ruling, nor does she substantiate her allegation that PHH MC's review of the Mortgage Loan prior to sending the three letters was reckless, or carried out in bad faith. *See generally* Pl. Mem.; Pl. 2d Resp. Given this, the Court agrees with defendants that the undisputed material facts do not show that PHH MC had knowledge that the claimed rights asserted in the three letters to plaintiff did not exist, as required to prove plaintiff's MCDCA claim.

Because the undisputed material facts show that USB, USB as Trustee, Ocwen, and OFC are not "debt collectors" under the MCDCA, and that PHH MC conducted a reasonable investigation of the nature and validity of the Mortgage Loan before sending the letters at issue, plaintiff cannot prevail on her MCDCA claim. And so, the Court must also GRANT defendants' motion for summary judgment and DENY plaintiff's motion for summary judgment on this claim. Fed. R. Civ. P. 56.

###    D.    Plaintiff Cannot Prevail On Her MCPA Claim

Plaintiff's MCPA claim is equally problematic. To prevail on this claim, plaintiff must prove, among other things, that any misstatements made by PHH MC in the three letters were made intentionally. *Green v. Wing Enterprises, Inc*., No. 14-1913, 2015 WL 7351478, at *5 (D. Md. Nov. 20, 2015) (holding that, for a defendant's misstatement to qualify as a "misrepresentation" under the MCPA, the plaintiff must show that the "defendant knew the statement was false or acted with reckless disregard for the truth of the statement"). And so, plaintiff cannot succeed on her MCPA claim unless she can establish either that: (1) PHH MC knew that any misstatements in the three letters were false, or (2) PHH MC acted with a reckless disregard for the truth of these statements.

Again, the undisputed material facts make clear that plaintiff cannot meet her burden of proof. Plaintiff alleges that PHH MC "misrepresented the character, amount, or legal status" of the Mortgage Loan and that it "unquestionably knew or should have known" that its communications were false. Pl. Mem. at 2, 4. But, as discussed above, it is undisputed that PHH MC conducted a reasonable review of the servicer records for the Mortgage Loan before making the statements contained in the three letters. SOF at ¶¶ 51-52, 54; Def. Mem. at 28-29. Plaintiff also fails to support her allegation that PHH MC intentionally made misstatements about the Mortgage Loan in these letters with any facts or evidence. *See generally* Pl. Mem.; Pl. 2d Resp.

Because the undisputed material facts in this case do not show that PHH MC intentionally, or recklessly, misrepresented any information regarding the Mortgage Loan in the letters sent to plaintiff, the Court must also GRANT defendants' motion for summary judgment and DENY plaintiff's cross-motion for summary judgment on this final claim.  Fed. R. Civ. P. 56; *Green*, 2015 WL 7351478, at *5.

## V.    CONCLUSION

In sum, the undisputed material facts in this case show that Brock & Scott had no involvement with the three letters that give rise to plaintiff's remaining claims.  The undisputed material facts similarly show that plaintiff cannot prevail on her FDCPA claim, because the remaining defendants are not "debt collectors" under that statute.  Plaintiff's MCDCA claim is also not viable, because the undisputed material facts make clear that Ocwen, USB, USB as Trustee, and OFC are not "debt collectors" under the MCDCA, and that PHH MC did not send any of the letters at issue in this case with knowledge, or a reckless disregard, of the fact that the claimed rights asserted in these letters did not exist.  Lastly, the undisputed material facts also show that none of the defendants made any intentional misrepresentations to plaintiff to substantiate her MCPA claim.

And so, the Court:

1.    **GRANTS** defendants' motions for summary judgment;

2.    **DENIES** plaintiff's cross-motion for summary judgment; and

3.    **DISMISSES** the second amended complaint.

Judgment is entered accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge